**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GIDEON NKRUMAH,               )<br>            Plaintiff,              )<br>                                            )<br>     v.                                     )<br>                                            )<br>UNIVERSITY OF PITTSBURGH – )<br>OF THE COMMONWEALTH    )<br>SYSTEM OF HIGHER              )<br>EDUCATION                           )<br>            Defendant.              ) | Civil Action No. 2:19-cv-1180 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

AND NOW COMES, Plaintiff Gideon Nkrumah ("Plaintiff" or "Nkrumah"), by and through his undersigned counsel, Kukoyi Law Firm, LLC and Lanre Kukoyi, Esq., respectfully files this Memorandum of Law in Opposition to Defendant University of Pittsburgh – of the Commonwealth System of Higher Education ("University") Motion for Summary Judgment (hereinafter "Motion").

I. **INTRODUCTION**

Plaintiff commenced the instant action on September 16, 2019. His Complaint asserted causes of action for violation of Title IX, violation of Constitutional Due Process and a breach of contract relating to the actions of Defendant in response to a false allegation by a fellow student of sexual misconduct against Plaintiff while a student at Defendant University's medical school. After this false allegation, Plaintiff was subjected to a biased investigation and restraints on his due process rights. Defendant failed to comply with the Department of Education's guidelines for Title IX investigations and the Plaintiff was not afforded his constitutional due process rights.

Furthermore, Defendant also breached its contract with Plaintiff as it fails to conduct

the investigation in an equitable and neutral manner as indicated in its student handbook and applicable policy and procedures. Pennsylvania Courts generally apply a contract law analysis in disputes between students and private institutions concerning policies and procedures in student handbooks. University is a State-related university in the Commonwealth of Pennsylvania, rather than a full public university. Because of this unique status, state-related universities are treated as public institutions in some situations, but Defendant had been put on notice that it should not expect to use this status to avoid its obligations to its students under contract law.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment should be granted whenever it is shown that there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This means that where all pleadings, discovery and affidavits "show that there is no genuine issue as to any material fact" and the movant "is entitled to a judgment as a matter of law", then summary judgment must be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Therefore, where there is a complete failure of proof regarding an essential element that needs to be proven at trial, it means that, out of necessity, ever other fact is meaningless and of no effect. Id. at 323. If a reasonable jury could view an evidence and rationally find in favor of the nonmoving party, then it is said that there is a genuine dispute of a material fact. Doe v. Abington Friends School, 480 F.3d 252, 256 (3rd Cir. 2007). The nonmovant must show where there is a genuine dispute of material facts in the record and the substantive law identifies which facts are deemed material. Id. The trial court is to believe the evidence of the nonmoving party and "all

justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### III.   ARGUMENT AND APPLICATION OF LAW

    a.   **Title IX gender discrimination.**

Contrary to Defendant's assertion in its Brief to support its Motion for Summary Judgment ("Brief"), in this Circuit, what is required for a Title IX claim is to show that facts that, if true, "...support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex." Doe v. University of the Sciences, 961 F.3d 203, 209 (3rd Cir. 2020). There is no "need to superimpose doctrinal tests" when analyzing Title IX matters. Id.

    Plaintiff claims that he believed that Defendant discriminated against him on the basis of gender because of the external pressure it faced. In his Amended Complaint, Plaintiff identified the first source of the pressure to be the fact that Defendant had some negative coverage regarding its handling of Title IX Complaints. (ECF 15 at ¶ 49). A female student at its School of Law claimed that Kristy Rzepecki ("Rzepecki") was biased in her investigation. Id. at 50. Rzepecki was the Title IX investigator of the Title IX Complaint against Plaintiff. The fact of this lawsuit was published in the November 13, 2017 edition of The Pitt News. (RFP 1d).

    Another source of the external pressure that Defendant faced was the federal government. The U.S. Department of Education issued a "Dear Colleague" letter in 2011 ("2011 Dear Colleague Letter") regarding how reports of sexual harassments and sexual violence should be handled in educational institutions receiving federal funding. (ECF 15

at ¶¶ 61-62). This Circuit has recognized that the 2011 Dear Colleague letter was a source of significant pressure that may lend itself to a finding of bias in a Title IX gender discrimination case, although not independently. University of the Sciences at 210.

In its Brief, Defendant misinterprets the import of the above-referenced November 2017 newspaper coverage of the lawsuit against Defendant. (Defendant's Brief at Page 13). Admittedly, it was a female student that filed the lawsuit, unlike here where Plaintiff is male. However, based on how Rzepecki towards Plaintiff during her investigation, a reasonable factfinder could conclude that she was making up for being accused of bias by a female. For example, Plaintiff testified in his deposition that he initially thought that Rzepecki's negative conduct towards him was because of his race. (Nkrumah Deposition at p. 65: 17-21). However, when he raised the issue, she claimed it was not a race thing because the Title IX Complainant, Vivianne Oyefusi ("Oyefusi"), is also black. (Id. at p. 68: 11-13; p. 145: 1-24).

In her Investigation Report ("Report"), Rzepecki stated that she did not consider the statement of Plaintiff's wife ("Wife") credible partly because of what can only be their familial or close relationship. (Pitt 000237). However, she included the testimony of Ademutola Akinnoye, who according to Rzepecki's own notes, is Oyefusi's cousin and not Plaintiff's friend as Defendant erroneously indicated in its supplemental initial disclosures. (Pitt 000104).

Rzepecki's bias was quite clear in her Report. There where times when Plaintiff provided information that was contrary to Oyefusi's, rather than reporting it in a neutral manner, Rzepecki framed it in a negative light. For example, Plaintiff told Rzepecki that that Oyefusi was atop him and grinding on him on August 19, 2016. (Pitt 000152).

However, in her Report, she changed his statement, instead concluding that he did not provide details discrediting Oyefusi's account, and that he denied penetration "but said if he did penetrate her, it occurred when he adjusted his scrotum when she was on top of him." (Pitt 000239). His statement, she said, contradicted Oyefusi's "consistent" statement. Id.

### b. Violation of Plaintiff's Due Process Rights

In its Brief, Defendant states that it did not violate Plaintiff's due process rights because it followed its policies and procedures regarding sexual misconduct and sexual violence. (Defendant's Brief pp. 15-16). Defendant is however, wrong. According to the University of Sciences Court, in order for an investigation into an allegation of sexual assault under Title IX to comport with the notion of basic elements of federal procedural fairness, it must include "a real,. Meaningful hearing and, when credibility determinations are at issue, the opportunity for cross-examinations of witnesses." 961 F.3d at 215. There has to be at least minimal protections against mistaken findings of misconduct and arbitrary exclusion from the educational institution. Goss v. Lopez, 419 U.S. 565, 581 (1975). Due process in circumstances such as the instant matter requires cross-examination to uncover the truth. Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018).

Rzepecki stated that she found Oyefusi credible but not Plaintiff, thereby triggering the requirement that Plaintiff should have had the opportunity to cross-examine the witnesses against him since credibility was at issue. (Pitt 000238). She found Oyefusi credible even though she stated that Oyefusi struggled to remember how she ended up naked. Id.

The arbitrary exclusion envisaged by the arbitrary exclusion envisaged by the

<u>Gross</u> Court occurred in this case. For example, in her Investigation Report ("Report"), Rzepecki stated that she did not consider the statement of Plaintiff's wife ("Wife") credible partly because of what can only be their familial or close relationship. (Pitt 000237). However, she included the testimony of Ademutola Akinnoye, who according to Rzepecki's own notes, is Oyefusi's cousin and not Plaintiff's friend as Defendant erroneously indicated in its supplemental initial disclosures. (Pitt 000104). Similarly, Rzepecki interviewed other close friends of Oyefusi, such as Jymirah Morris ("Morris"), and did not see any potential conflict of interest because of the close friendships.

Rzepecki and her supervisor, Katie Pope ("Pope"), also wrongly excluded an audio recording made by Plaintiff's wife that would have exonerated him. The recording was of conversation via the phone call function of Facebook Messenger between Plaintiff's wife and Oyefusi on 9/1/2016. Rzepecki and Pope excluded the recording because they claimed it was illegally obtained according to Pennsylvania law. (Pitt 000238-239; Katie Pope Written Deposition, p. 4: 7; Rzepcki Deposition, Volume 2, pp. 120-121: 19-16). However, Plaintiff's wife was in Ohio when she made the recording and Ohio is a one-party consent state, so it was legal where it was made. Similarly, the federal rule, which may be applicable in this case because Title IX is a federal question is a one-party consent rule. 18 U.S.C. 2511(2)(d).

The Pleadings and documents filed by Defendant itself in this case are all replete with what are essentially admissions that it did not provide Plaintiff with the necessary due process because it asserts that it did not provide Plaintiff with a live hearing or opportunity to cross-examine the witnesses against him. Defendant actually has such a mechanism in place for what it terms Level II Hearings but had chosen not to utilize it for Title

IX matters.

    c.  **Breach of Contract**

It is established that in Pennsylvania a dispute over contents of a student handbook in a private university between the institution and a student is analyzed according to contract law principle. Reardon v. Allegheny College, 926 A.2d 477, 480 (Pa. Super. 2007). Therefore, Plaintiff's breach of contract claim against Defendant mainly turns on: (1) whether Defendant is a public institution for breach of contract purposes and; (2) if Defendant is not a public institution, then was there a promise that was breached.

Defendant is a state-related university. Therefore, it is different from a state-owned university. Commonwealth v. Durso, 86 A.3d 865, 868 (Pa. Super. 2013). While it has not been settled whether or not a state-related status protects Defendant such that its student handbook is not held against it as a contract, it was told not to "expect to use its unique status to avoid any obligation to its students under either due process or contract law." Walsh v. University of Pittsburgh, 2015 U.S. Dist. LEXIS 2563, *19 (W.D. Pa. Jan. 8, 2015), quoting Gati v. University of Pittsburgh of Commonwealth System of Higher Education, 91 A.3d 723, 730 n.12 (Pa. Super. 2014).

Therefore, Plaintiff humbly requests that the Honorable be guided by the Gati pronouncement and analyze Plaintiff's breach of contract claim accordingly.

In its Student Code of Conduct, Defendant promises to all its students that it would conduct an equitable investigation into allegations of sexual misconduct. (UP001067). Equitable can be said to mean fairness. Doe v. University of the Sciences, 961 F.3d 203, 212 (3rd Cir. 2020). In University of Sciences, the Court found that fairness promised in a Student Handbook related to procedural protections for students

7

similarly situated as Plaintiff. Id. Therefore, it held that the contractual promise of fairness in a sexual-misconduct investigation can only be met by providing "a real, live, and adversarial hearing and the opportunity for the accused student or his or her representative to cross-examine witnesses-including his or her accusers." Id. at 215.

As discussed above, Defendant did not provide this opportunity to Plaintiff, meaning that it breached contractual promise to him.

It should also be noted, that Defendant's failure to adhere to its promise[1] not to apply rules of evidence that are "followed in court proceedings" but rather would be guided by reasonable rules of relevancy to decide whether to include evidence or not is also a breach. However, since Defendant's failure to comport to due process constitutes a breach of its contractual obligations to Plaintiff, he refrains from expanding on this point.

## IV. CONCLUSION

Plaintiff is respectfully requesting that the Court deny Defendant University of Pittsburgh- Of The Commonwealth System of Higher Education's Motion for Summary Judgment in its entirety.

Date: June 21, 2021.                    Respectfully submitted,

                                                    /s/ Olanrewaju Kukoyi
                                                    Lanre Kukoyi, Esq.
                                                    PA I.D. # 315955
                                                    Kukoyi Law Firm, LLC
                                                    510 Washington Ave,
                                                    Carnegie, PA 15106
                                                    Voice (412) 200-2440

---

[1] This is contained in the section of its Student Handbook titled Formal Complaint Process and University-Initiated Investigations. It is attached as Exhibit _____.

                                                                             Facsimile (412) 502-5105  
                                                                             kukoyi@kukoyilaw.com